UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TYRONE BURNS, <br><br> Plaintiff, <br><br> v. <br><br> MARCUS HARDY, *et al.*, <br><br> Defendants. | No. 11 C 7267 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tyrone Burns is currently incarcerated as an inmate in the Illinois Department of Corrections ("IDOC") at Lawrence Correctional Center ("Lawrence"). The instant case involves Plaintiff's claim for deliberate indifference and common law negligence against Defendants Sylvia Mahone, M.D. ("Dr. Mahone") and Wexford Health Sources, Inc. ("Wexford" and, collectively, "Defendants") with regards to Plaintiff's medical treatment while he was an inmate housed on a temporary basis at the IDOC Northern Reception and Classification Center ("NRC").[1] Specifically, Plaintiff alleges that he was in pain due to a benign growth on his right hip, and did not receive appropriate medical treatment from Dr. Mahone and Wexford during the six months that he was an inmate at the NRC.

Currently before me is Defendants' motion for summary judgment. For the following reasons, I am denying Defendants' motion.

## BACKGROUND

On May 14, 2010, Plaintiff went to the emergency room at Stroger Hospital due to intense pain he was experiencing from a mass on his right hip. At Stroger, the attending physicians discovered a lump they believed was a tumor, and consequently, referred Plaintiff to

---

[1] Plaintiff has already settled all claims against Defendant Marcus Hardy.

1

the Surgical Oncology Department for a biopsy and surgical removal. Plaintiff subsequently was seen by an oncologist, Dr. Lazzaro, on May 18, 2010 who confirmed that the mass required a biopsy and scheduled the procedure for a date within a few weeks. Plaintiff was also prescribed hydrocodone to alleviate the pain. Prior to the biopsy being performed, however, Plaintiff was arrested and incarcerated at the Cook County Jail, before being transferred to the Northern Reception and Classification Center ("NRC") at Stateville Correctional Center ("Stateville") on June 8, 2010.

Upon arriving at NRC, Plaintiff underwent an intake physical examination by Diane Schwarz, a physician's assistant. Plaintiff told Schwarz that he was in extreme pain from the mass on his hip. After the examination, Schwarz concluded that the mass was a tumor, and believed that it needed to be biopsied and surgically removed immediately. Because Schwarz cannot order a biopsy, she prescribed over-the-counter pain medication and referred Plaintiff to Dr. Sylvia Mahone, the NRC Medical Director, for further examination.

Dr. Mahone first examined Plaintiff on June 14, 2010. She concluded that Plaintiff needed additional tests, but told him that a biopsy and surgery were necessary and should be scheduled in the near future. Plaintiff's right hip was x-rayed on June 17, 2010. Although the x-rays were negative, Dr. Mahone ordered some additional tests, and told Plaintiff that she would make arrangements for a biopsy.

On June 22, 2010, Dr. Mahone submitted a "Medical Special Services Referral and Report" ("MSSR Report") for Plaintiff, where she stated that the need for treatment was "Urgent" and referred Plaintiff to outpatient general surgery at the University of Illinois-Chicago Hospital. According to Dr. Mahone, she was concerned that if Plaintiff did not receive a biopsy while at NRC, he may not receive the treatment he needed when moved to a permanent

2

correctional facility.

Prior to referring an inmate for an outpatient medical procedure, a collegial review must be undertaken with Wexford physicians in Pennsylvania. The collegial review took place on June 22, 2010. There, Dr. Hector Garcia, a Dedicated Utilization Management Physician and Wexford's National Medical Director, ignored Dr. Mahone's recommendation for a biopsy. Even though Dr. Garcia did not examine Plaintiff, he, on Wexford's behalf, overruled Dr. Mahone and denied the referral. Instead, he recommended over-the-counter medication, and directed Dr. Mahone to convene another collegial review should the medication not address and treat the growing mass. Despite ordering a biopsy, a procedure she believed was "urgent," Dr. Mahone followed this direction and gave Plaintiff a modest dosage of pain medication. Although she had the right to appeal, Dr. Mahone chose against appealing this decision, even though it was one of the first times in her career at Wexford where her recommendation and medical judgment was overruled.

One month later, Plaintiff scheduled a visit to see Dr. Mahone, as his mass had doubled in size. Despite continued difficulty walking and sleeping, and even though the pain medication was irritating his stomach, causing more pain and suffering, Dr. Mahone did nothing other than increasing the dosage of his medication to treat the growing mass on his hip. Contrary to Wexford's instructions, she did not initiate another collegial review or attempt to have the mass biopsied. Ultimately, in November 2010, Plaintiff was transferred to Lawrence Correctional Center.

After filing a grievance against Lawrence Correctional Center, its warden, and the Wexford physicians working there, Plaintiff finally was sent for a biopsy at the Carle Foundation Hospital ("Carle") in Urbana, Illinois in May 2011. There, the lump was drained of fluid.

Approximately one month later, Plaintiff was seen by Dr. Daniel Pontius at the Lawrence County Memorial Hospital, who was concerned that the lump on Plaintiff's hip was a sarcoma. On August 2, 2011, the lump on Plaintiff's right hip, now diagnosed as a "right thigh tumor" was removed at Saint Louis University Hospital. Despite removal of the "right thigh tumor," Plaintiff still experiences, and believes that he will continue to experience, pain for the rest of this life in his pelvic region and continues to have difficulty sleeping and walking.

## LEGAL STANDARD

"Summary judgment is designed to head off a trial if the opposing party 'does not have a reasonable prospect of prevailing before a reasonable jury—that is, a jury that will base its decision on facts and the law, rather than on sympathy or antipathy or private notions of justice.'" *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 338 (7th Cir. 1991) (quoting *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989)). Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 708 (7th Cir. 2011). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In making a summary judgment determination, the Court must "construe all facts and reasonable inferences in favor of the non-moving party." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 653 (7th Cir. 2010).

## DISCUSSSION

**I.        Plaintiff's Deliberate Indifference Claim Against Dr. Mahone**

In order to succeed on a claim for deliberate indifference against an individual defendant medical provider such as Dr. Mahone, a plaintiff must prove: (1) the existence of a

serious medical need; (2) that the defendant was subjectively aware of a specific, serious medical need or risk; and (3) that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Plaintiff has provided enough evidence towards all three of these elements to defeat summary judgment.

### A. Serious Medical Condition

A serious medical condition is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007). "Notably, '[a] medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)).

The evidence shows that the lump on Plaintiff's hip was growing. He sought medical help before he was incarcerated and was told that he needed a biopsy. There is no evidence that he was embellishing his symptoms, or that his pain was caused by something else. Every medical professional who personally examined Plaintiff, and this includes everyone besides Dr. Garcia who represented Wexford from Pennsylvania during the collegial review, told Plaintiff that he needed a biopsy. A reasonable jury could certainly find Plaintiff's condition to be a serious one.

### B. Subjective Awareness

Similarly, there is no question that Plaintiff has provided enough evidence to convince a reasonable juror that Dr. Mahone was subjectively aware of specific and serious medical need

5

or risk. Dr. Mahone classified her request for a biopsy as urgent. Although Dr. Mahone testified that she was concerned that if Plaintiff did not receive a biopsy while at NRC, he may not receive the treatment he needed when moved to a permanent correctional facility—a perfectly valid reason that would explain why Dr. Mahone may have classified the biopsy request as urgent even though she didn't truly believe it to be—this too is a triable issue of fact for a jury.

**C.** **Deliberate Indifference**

A plaintiff must also demonstrate that the "prison officials acted with a sufficiently culpable state of mind," meaning that the prison officials knew that the prisoner's medical condition posed a serious risk to the prisoner's health, but they consciously disregarded that risk. Greeno v. Daley, 414 F.3d 645, 2005 WL 1540261, (7th Cir. 2005); *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012)." *Burns v. Fenoglio*, No. 11-CV-1104-NJR-DGW, 2014 WL 7359696, at *4 (S.D. Ill. Dec. 23, 2014).

Prisoners are not entitled to receive "unqualified access to healthcare"; instead, they are only entitled to "adequate medical care." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citations omitted). Furthermore, "[t]here is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field." *Id.* (quoting *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008)). Accordingly, in order for a prison medical professional to be held liable for deliberate indifference, his or her treatment decisions must be "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Holloway*, 700 F.3d at 1073 (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). In other words, a prison medical professional is "entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those

6

circumstances." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Sain*, 512 F.3d at 894–95).

This too is a trial issue of fact for the jury. The evidence, when viewed in a light most favorable to Plaintiff, shows that: (1) Dr. Mahone along with other doctors repeatedly describe the mass on Plaintiff's right hip as a tumor in their clinical notes; (2) Dr. Mahone not only wanted the mass to be biopsied, she believed it was necessary and urgent; (3) Dr. Mahone believed that if Plaintiff did not receive the biopsy before being transferred to a permanent facility, he would never receive the medical care he needed; (4) Dr. Mahone believed Plaintiff would be able to undergo the biopsy within a week of her request for the biopsy; (5) Dr. Mahone actually requested that the biopsy be performed, but was denied during Wexford's collegial review by a doctor who never examined Plaintiff; (6) Of the thousands of collegial reviews she conducted in her career, this was one of the only time where her request for medical treatment was denied; (7) Dr. Mahone did not appeal the decision made during collegial review; (8) Dr. Mahone continued to believe a biopsy was still necessary upon subsequent examinations because the mass was growing rapidly and still causing Plaintiff extreme pain; (9) Dr. Mahone never requested another collegial review; and (10) Despite taking so many ineffective over-the-counter pain medications that he was experiencing unbearable stomach pain and difficulty defecating, Dr. Mahone refused to prescribe stronger and different pain medication.

Furthermore, it seems clear that the amount of time that passed before Plaintiff received the medical treatment that he needed and eventually received would never have happened if he were a civilian seeing a doctor outside of jail. Viewing all of the evidence in a light most favorable to Plaintiff, a reasonable jury could infer that Dr. Mahone substantially departed from professional judgment by accepting Wexford's rejection of her request for a

7

biopsy without filing an appeal. Defendant's motion for summary judgment is therefore denied with respect to Plaintiff's deliberate indifference claim against Dr. Mahone.

## II.     Plaintiff's Deliberate Indifference Claim Against Wexford

As against a corporation, such as Wexford, a plaintiff must show that the alleged injury was the result of the corporation's official policy or widespread practice. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985); *Monell v. New York City Dep't Soc. Servs.*, 436 U.S. 658, 690-91 (1978). In other words, Plaintiff must also show a direct causal connection between the claimed wrongful policy or practice by Wexford and the alleged harm done. The policy or practice must be the "moving force [behind] the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

The policy in question here is one where Wexford allows a team of non-attending physicians, thousands of miles away to supplant the medical judgment of a Site Director without examining the patient. Plaintiff may proceed with this claim.

## III.    Negligence

With regard to the negligence claim, the standard of care required of a defendant is to act as would an ordinarily careful, or a reasonably prudent, person. In their motion for summary judgment, Defendants argue that Plaintiff cannot defeat summary judgement on his negligence claim because he has failed to provide expert medical testimony.

Although expert testimony is generally "needed to support a charge of malpractice because jurors are not skilled in the practice of medicine and would find it difficult without the help of medical evidence to determine any lack of necessary scientific skill on the part of the physician," *Walski v. Tiesenga*, 72 Ill. 2d 249, 256 (Ill. 1978), expert testimony is not necessary in situations where a physician's conduct is so grossly negligent or the treatment is so common

that a layman could readily appraise it. *Benison v. Silverman*, 233 Ill. App. 3d 689, 693 (1st Dist. 1992). With the help of all of the paperwork that will be submitted to the jury that has been discussed by various witnesses through their testimony, this is a situation that can be appraised by a layman and must be decided by a jury.

## CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment is denied.

ENTER:

*/s/ James B. Zagel*

James B. Zagel
United States District Judge

DATE: August 16, 2016